# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SAMUEL ORTIZ-DIAZ | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 12-726 (RCL) |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, OFFICE OF THE INSPECTOR GENERAL | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Samuel Ortiz-Diaz brings this Title VII action against his former employer—defendant U.S. Department of Housing and Urban Development, Office of the Inspector General ("HUD-OIG")—alleging retaliation and discrimination on the bases of race and national origin when HUD-OIG denied his requests to transfer and excluded him from meetings. HUD-OIG moves to dismiss for failure to state a claim or, in the alternative, summary judgment. Upon consideration of this motion [5], Ortiz-Diaz's opposition [6] thereto, and HUD-OIG's reply [8], the Court will GRANT the motion with respect to the retaliation claim and DENY the motion with respect to the discrimination claims.

## I. BACKGROUND

Ortiz-Diaz worked as a criminal investigator in HUD-OIG headquarters in Washington, DC, from December 15, 2009, to January 1, 2011. While in this position, he testifies to having been subjected to a pattern of discriminatory treatment because he is Hispanic and was born in

Puerto Rico. In 2010 he began seeking transfer to HUD-OIG field offices in the northeast in an alleged attempt to leave the discriminatory environment and find better opportunities for career advancement. His attempts were never successful, however, and Ortiz-Diaz grew very angry over HUD-OIG's denials.

Subsequently, in September 2010, Ortiz-Diaz claims that Assistant Inspector General for Investigations John McCarty, ordered that Ortiz-Diaz no longer attend joint meetings with the Department of Justice ("DOJ") that he had previously been assigned to attend. Ortiz-Diaz alleges that his exclusion from these meetings limited his training and opportunities for career advancement by preventing him from interacting with employees of other agencies and generally casting his reputation in a negative light.

Also, in October 2010, Ortiz-Diaz claims that he had a telephone conversation with Special Agent-in-Charge Rene Febles who informed him that Region 2 (New York) needed another Special Agent at the same pay grade as Ortiz-Diaz's current position. Ortiz-Diaz then requested that he be transferred to HUD-OIG's office in Albany, New York, to fill this position. While there was no investigative division in the Albany office, Ortiz-Diaz claims that other HUD-OIG offices commonly allow employees in various divisions to share office space even if their divisions do not have an official presence in those offices. Ortiz-Diaz's request was passed up the chain of command to McCarty who was the ultimate decision maker. Despite Febles' alleged support of the transfer, McCarty denied the request on October 12, 2010. That same day, Ortiz-Diaz allegedly spoke with McCarty and verbally requested another transfer to Hartford, CT, in response to an announcement offering a position also at Ortiz-Diaz's pay grade. According to Ortiz-Diaz, McCarty verbally denied the request.

On November 2, 2010, Ortiz-Diaz filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), stating that the above events constituted discrimination based on his "Hispanic" race and "Puerto Rican" national origin. In its Notice of Acceptance, the EEOC stated that under its policy, "Hispanic" was defined as a national origin, not a race, and that it would therefore only investigate for discrimination based on national origin. Ortiz-Diaz's counsel responded to this decision by objecting to the characterization of "Hispanic" as only a national origin, and not a race, but stated, "given the method of proof required to make a claim pursuant to Title VII, we see the distinction as insignificant."

After 180 days had passed from the filing of the complaint without a final decision from EEOC, Ortiz-Diaz filed this action in federal court pursuant to 42 U.S.C. § 2000e-16(c). In his complaint before this court, he alleges an additional count of retaliation not previously specified in his EEOC complaint, claiming that HUD-OIG's decision to exclude him from meetings was in response to his belief that he had been discriminated against. HUD-OIG now moves to dismiss for failure to state a claim or, in the alternative, for summary judgment. Ortiz-Diaz opposes this motion and seeks time for discovery, given that none has been conducted since he filed his civil action before this court.

## II. ANALYSIS

Title VII of the Civil Rights Act of 1964 protects employees from discrimination on the basis of certain protected statuses, such as race and national origin, as well as retaliation in response to employee conduct that opposes prohibited discrimination. *University of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2525 (2013). Status-based discrimination claims arise under 42 U.S.C. § 2000e-2(a)(1): "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, *or otherwise to*

3

*discriminate against* any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." (emphasis added). To succeed under this section, employees must prove that they suffered an adverse employment action that was at least partially motivated by the employer's animus to their protected status. *See* 42 U.S.C. 2000e-2(m) (holding employer's liable when these statuses were a "motivating factor for any employment practice, even though other factors also motivated the practice").

Claims of retaliation are derived from 42 U.S.C. § 2000(e)-3, which provides in relevant part, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [they] have opposed any practice made an unlawful employment practice by this subchapter." To succeed in this claim, employees must establish that (1) they engaged in actions protected under this statute, that (2) these actions were a cause-in-fact of their exclusion from the meetings, and that (3) the employer's retaliation constituted an adverse employment action. *Nassar,* 133 S.Ct. at 2534. Our review of both discrimination and retaliation claims is de novo. *Chandler v. Roudebush*, 425 U.S. 840, 841 (1976).

**A.     Dismissal**

**1. Failure to State a Claim (Rule 12(b)(6))**

The Federal Rules of Civil Procedure set a relatively low bar for complaints: they must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.8(a)(2). Given this liberal standard, dismissal under Rule 12(b)(6) is only appropriate when a complaint does not allege enough facially plausible facts to permit the court to reasonably infer that the defendant is liable for the alleged violation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79; *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). For example,

complaints that merely state unsupported legal conclusions or that formulaically recite the elements of a cause of action without alleging sufficient facts to back up the action are properly dismissed under Rule 12(b)(6). *E.g.*, *Iqbal* 556 U.S. at 678–79. When deciding whether a complaint satisfies this standard, courts are to construe the complaint, and draw all reasonable inferences from it, in a light most favorable to the plaintiff, and to accept as true all of the complaint's plausible factual allegations. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2008).

With specific reference to employment discrimination cases like this one, the Supreme Court in *Twombly* emphasized that courts should not require complaints to contain more facts than is necessary to "nudge[] [a] claim across the line from conceivable to plausible." *Twombly* 550 U.S. at 569–70. Thus, they need not allege "specific facts beyond those necessary to state [the] claim and the grounds showing entitlement to relief." *Id.* (reaffirming its earlier holding in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) that complaints alleging employment discrimination need not contain facts supporting each element of a cause of action in detail). "[O]nce a claim has been stated adequately, it may be supported by showing *any set of facts* consistent with the allegations in the complaint." *Id.* at 563 (emphasis added)). Moreover, our circuit has, post-*Twombly*, been even more emphatic—"[b]ecause racial discrimination in employment is a claim upon which relief can be granted, . . . 'I was turned down for a job because of my race' is all a complaint has to state to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Potts v. Howard Univ. Hosp.*, 258 Fed.Appx. 346, 347 (D.C. Cir. 2007) (alteration in original) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 111, 115 (D.C. Cir. 2000) (internal quotation marks omitted)); *see also*, *Bryant v. Pepco*, 730 F.Supp.2d 25, 29 (D.D.C. 2010) (observing this position).

In support of its motion to dismiss for failure to state a claim, HUD-OIG provides the court with nothing more than a conclusory allegation that "[t]he [p]laintiff is unable to provide more than labels and conclusions, or assert a formulaic recitation of the elements of a cause of action." Def.'s Reply [8] at 2. After reviewing the complaint on its own, however, the court finds it sufficient to withstand dismissal under 12(b)(6).

With respect to the status-based claims, the complaint makes specific allegations regarding Ortiz-Diaz's race and national origin (Am. Compl. ¶ 6), denied transfer requests adversely affecting his career opportunities[1] (*Id.* at ¶¶ 7–9, 16–18), and instances in which other, similarly situated employees outside his protected class had their transfer requests treated more favorably. (*Id.* at ¶¶ 10–11, 16–17). Such allegations easily satisfy the standard for 12(b)(6).

The complaint is less specific with regard to the retaliation claim, yet still likely complies with the permissive standard articulated by the Supreme Court and the D.C. Circuit. The complaint contains sufficient facts for the court to infer that Ortiz-Diaz suffered an adverse employment action when he was his excluded from meetings with DOJ. Am. Compl. ¶ 12. However, it is less detailed in its explanation of how this exclusion was retaliatory. All it claims is

> McCarty was aware that [p]laintiff believed the transfer or reassignment denials were discriminatory. Mr. McCarty was also aware that [p]laintiff was seeking a new position because he believed Mr. McCarty subjected him to discrimination. [p]laintiff discussed his new position with his immediate supervisors, who in turn discussed the issues with Mr. McCarty. Am. Compl. ¶ 13.

and,

> Plaintiff's supervisor and the relevant decision maker were aware that [p]laintiff believed he had been discriminated against and that [p]laintiff was engaging in

---

[1] Even denials of "lateral" transfers, *i.e.*, transfers to positions with no increase in pay and benefits, have in some cases been an adverse employment action for the purposes of Title VII. *E.g.*, *Stewart v. Ashcroft*, 352 F.3d 422, 426–27 (D.C. Cir. 2008); *see also*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (explaining that Congress intended Title VII to prohibit all types of discriminatory treatment and not just those that have an economic or tangible impact).

> protected activity. Because of [p]laintiff's belief and complaints regarding discrimination and his attempt to seek a new position, Mr. McCarty negatively altered the terms and conditions of [p]laintiff's employment by precluding him from attendance at meetings which were critical to [p]laintiff's position. *Id.* at ¶ 20.

Such allegations do not inform the court as to *how* McCarty became aware of Ortiz-Diaz's belief or help it evaluate whether Ortiz-Diaz did anything that might constitute "opposition" for the purposes of 42 U.S.C. § 2000e-3[2], but that is not the court's role at this stage. Given the pleading standard articulated by the Supreme Court and our circuit, the complaint's simple assertion that McCarty was aware that Ortiz-Diaz thought he was being discriminated against is probably sufficient to state a claim. Ultimately, however, this determination is not necessary to this court's judgment because Ortiz-Diaz has failed to exhaust administrative remedies with respect to his retaliation claim as discussed *infra* p. 10–11.

**2. Exhaustion of Administrative Remedies with Respect to the Racial Discrimination and Retaliation Claims**

HUD-OIG also contends that Ortiz-Diaz's claims of racial discrimination and retaliation, in particular, should be dismissed for failure to exhaust administrative remedies. Before initiating a Title VII civil action, federal employees are required to exhaust administrative remedies by filing an administrative complaint with the EEOC. *Harris v. Gonzales*, 488 F.3d 442, 443 (D.C. Cir. 2007). After the EEOC has had sufficient time to investigate, federal courts can review those claims "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted). Such claims are limited to those that are either encompassed within

---

[2] "Opposition" for the purposes of this statute has been read broadly. *See e.g.*, *Crawford v. Metropolitan Gov't of Nashville & Davidson County, Tennessee*, 129 S.Ct. 846, 850 (2009) (considering an employee's responses to an employer's questions about whether she had been discriminated against to be "opposition.") Thus, even informal verbal complaints might suffice depending on the context.

7

the administrative investigation or can reasonably be expected to arise out of the administrative investigation.[3] *Id.* Making this inquiry necessarily involves examining the facts alleged in the EEOC complaint to determine whether the EEOC had notice to investigate the claims first before they were raised in court. *Mangiapane v. Adams*, 661 F.2d 1388, 1389 (D.C. Cir. 1981); *Mathirampuzha v. Potter,* 548 F.3d 70, 76 (2d Cir. 2008). "It is the substance of the [EEOC complaint] and not its label that controls." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003).

Significantly, all of the material facts alleged in the complaint before the court were also alleged in the EEOC complaint. HUD-OIG argues, however, that because the EEOC excluded the claim of racial discrimination from its investigation (because it did not consider "Hispanic" to be a race), Ortiz-Diaz failed to exhaust administrative remedies with respect to that claim. It also argues that the claim of retaliation should be dismissed because Ortiz-Diaz failed to check the box marked "reprisal" in his administrative complaint.

(a) Racial Discrimination

Ortiz-Diaz's racial discrimination claim appears sufficiently "like or reasonably related" to the claim of national origin discrimination to allow it to proceed. Several courts have recognized that, in some contexts, race and national origin may be so substantially related as to be indistinguishable. *E.g.*, *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J. Concurring); *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003); *Sinai v. New England Tel. and Tel. Co.*, 3 F.3d 371, 475 (1st Cir. 1993); *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. Unit B 1981). Whether "Hispanic" is better classified as a race or

---

[3] The "reasonably related" doctrine balances two opposing concerns. On the one hand, it recognizes that employees who fill out EEOC complaints often do so without the assistance of counsel and may not know which legal claims best match what they experienced. *Mathirampuzha v. Potter,* 548 F.3d 70, 77 n.6 (2d Cir. 2008). On the other hand, it ensures that employers are alerted to all charges that may be brought against them. *Id.*

national origin is unclear.[4] *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F.Supp.2d 455, 460 (S.D.N.Y. 1998) (allowing the claim of racial discrimination when the plaintiff, a Hispanic, only alleged national origin discrimination on his EEOC complaint).

The procedural history of this case renders this analysis unnecessary, however. Here, Ortiz-Diaz considered his race to be "Hispanic" and his national origin to be "Puerto Rican" and alleged discrimination on both grounds. The EEOC, however, considered both "Hispanic" and "Puerto Rican" to be national origins, and neither a race, and therefore only investigated for national origin discrimination. Either way, the EEOC investigated for the very type of discrimination that Ortiz-Diaz claims was racial discrimination—discrimination on account of his being Hispanic. Thus, it is not possible for HUD-OIG to assert that the EEOC investigation was not "like or reasonably related to" Ortiz-Diaz's claim of racial discrimination. In fact, it was the exact same investigation. Any distinction between the two is merely a matter of labels, not of substance.[5]

---

[4] Because of its obligation to review Title VII complaints de novo, the court does not show deference EEOC's definitions of these terms.

[5] Even if the EEOC did not investigate discrimination on account of his being Hispanic at all but instead limited its investigation to national origin discrimination on account of his being Puerto Rican, the court would still be on solid footing for considering his racial discrimination claim to be "like or reasonably related" to his national origin discrimination claim. In *Dequan Lin v. Salazar*, this court acknowledged a tendency to treat claimants, like Ortiz-Diaz, who are seeking to add racial discrimination claims to their national origin discrimination claims more favorably than claimants who seek to add national origin discrimination claims to their racial discrimination claims. *Dequan Lin v. Salazar*, 891 F.Supp.2d 49, 54–55 (D.D.C. 2012). It found that while allegations of racial discrimination tend to "not preserve an allegation of national origin discrimination for a Title VII action, the reverse is not necessarily true." *Id.* (comparing *Brown v. Georgetown Univ. Hosp. Medstar Health,* 828 F.Supp.2d 1, 7 (D.D.C.2011) (national origin claim preserved racial discrimination claim) with *Sisay v. Greyhound Lines, Inc.,* 34 F.Supp.2d 59, 64 (D.D.C.1998) (racial discrimination claim did not preserve a claim of national origin discrimination). The question in all of these cases is whether the claim of national origin discrimination would reasonably trigger an administrative investigation into racial discrimination, such that the employer would have had notice. *Dequan Lin*, 891 F.Supp.2d. at 55. It seems likely that an investigation into whether Ortiz-Diaz was discriminated based on his being Puerto Rican would be reasonably related to whether he was discriminated based on his being Hispanic. *See, e.g., Cordero v. Heyman*, No. 97cv0435, 1998 WL 730558, at *5 (S.D.N.Y. Oct. 19, 1998) (finding claim of discrimination based on "Hispanic" race to be reasonably related to a claim of discrimination based on "Puerto Rican" national origin); *Dequan Lin*, 891 F.Supp.2d at 55 (finding that an investigation into discrimination on the basis of the plaintiff's Chinese national origin was reasonably related to his claim of discrimination on the basis of his Asian race).

Moreover, this is not a situation where the Title VII complainant neglected to allege racial discrimination at the administrative level and only now seeks to bring it in. Ortiz-Diaz filed a claim for racial discrimination and was denied. In *Mangiapane*, the DC Circuit emphatically held that Title VII complainants are deemed to have exhausted their administrative remedies with respect to new allegations that they unsuccessfully attempted to introduce at the administrative level. *Mangiapane v. Adams*, 661 F.2d 1388, 1390 (D.C. Cir. 1981). It noted that agencies, not employees, have the burden of developing the administrative record, and that "the only exhaustion requirement expressly made by Title VII is the employee's duty to 'first complain to his employing agency.'" *Id.* That much Ortiz-Diaz has done by having included racial discrimination on his EEOC complaint.[6]

(b) Retaliation

However, the claim of retaliation cannot be construed as "like or reasonably related" to the other claims in the administrative complaint. In the administrative complaint, Ortiz-Diaz only checked the boxes for "race" and "national origin" but did not check the box for "reprisal." Moreover, while he alleged in that complaint that his employer had excluded him from meetings, he left no indication that the exclusion was in response to his having engaged in a protected activities.

Complainants can normally still raise claims even if they failed to check the box appropriate to those claims on their EEOC complaint as long as they allege facts that support the claims. *See* Sanchez *v. Standard Brands*, 431 F.2d 455, 464 (5th Cir. 1970) (explaining that the

---

[6] On this point, HUD-OIG notes that Ortiz-Diaz failed to adequately object to the EEOC's decision to limit his claim to national origin discrimination. It observes that some courts have held that a failure to object to the EEOC's framing of issues effectively waives unrelated claims. *E.g.*, *Clayton v. Rumsfeld*, 106 Fed.Appx. 268, 271–72 (5th Cir. 2004); McKeithan v. Boarman, 803 F.Supp.2d 63, 67–79 (D.D.C. 2011). None of these cases are binding on this court and all are much less relevant. Here, the investigation conducted by the EEOC is much more related to the claim this plaintiff seeks to include; indeed, it is the exact same.

10

"selection of which box to check is . . . nothing more than the attachment of a legal conclusion to the facts alleged" and that a party should not be "cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations"). However, when nothing in the facts would reasonably give rise to an investigation related to the claim the complainant seeks to introduce in court, the claim must be dismissed for failure to exhaust administrative remedies. *Ndondji v. InterPark Inc.*, 768 F.Supp.2d 263, 279 (D.D.C. 2011) (denying retaliation claim when complainant only alleged national origin discrimination and did not allege any facts alleging retaliation); *Ponce v. Billington*, 652 F.Supp.2d 71, 73–74 (D.D.C. 2009) (same); *Rattigan v. Gonzales*, 503 F.Supp.2d 56, 69 (D.D.C. 2007) (same).[7]

Certainly, the facts regarding Ortiz-Diaz's exclusion from the meetings would reasonably have prompted an investigation into whether they were in fact true and whether they were motivated by animus toward his race or national origin, but they could not reasonably be expected to give rise to an investigation into retaliation when the plaintiff did not allege to have done or said anything that the employer might have retaliated against. Thus, this claim must be dismissed.

**B. Summary Judgment**

Summary judgment is reserved only for cases in which "[1] there is no genuine dispute as to any material fact and [2] the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the burden of

---

[7] Plaintiffs do not need to exhaust administrative remedies before bringing retaliation claims when the alleged retaliatory acts occurred in response to the filing of their EEOC complaint. *Pyrne v. District of Columbia*, 298 F.Supp.2d 7, 12 (D.D.C. 2002). Here, however, the actions that Ortiz-Diaz alleges were retaliatory—his exclusion from the meetings—occurred prior to the filing of his EEOC complaint.

11

demonstrating the absence of any genuinely disputed material facts. *Celotex Corp. v.* Catrett, 477 U.S. 317, 322 (1986). Once it satisfies that burden, the moving party is "'entitled to judgment as a matter of law' if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Lathram v.* Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (quoting *Celotex,* 477 U.S. at 322). In making these determinations, the court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in his favor. *Anderson*, 477 U.S. at 250, 55.

Summary judgment is inappropriate at this time because the plaintiff has not yet had the benefit of discovery at the federal court level. The defendant argues that the investigation conducted at the administrative level should be sufficient. District courts are strongly counseled against resolving Title VII cases based on the administrative record alone, however. *E.g.*, *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008); *Hackley v. Roudebush*, 520 F.2d 108, 149 (D.C. Cir. 1975). Title VII requires courts to allocate burdens of proof to the parties in various ways depending on the types of claims raised and the evidence introduced. *See e.g., Nassar*, 133 S.Ct. at 2526 (contrasting the statutorily prescribed burden-shifting framework for mixed motive discrimination claims with the different standard for retaliation claims); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (limiting the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) to cases where there is only circumstantial evidence of discrimination, not when there is direct evidence of discrimination); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (explaining how, as a practical matter, plaintiffs almost never need to prove a prima facie case as required by *McDonnell Douglas* even when they have no direct evidence of discrimination).

Without the benefit of discovery, therefore, it is very difficult for courts to know exactly what showing plaintiffs will need to make at trial. *Swierkiewicz*, 534 U.S. at 511–12; *Chappell-Johnson v. Powell*, 440 F.3d 484, 488–89 (D.C. Cir. 2005).

Ortiz-Diaz also asserts that discovery is necessary to further develop the record. Rule 56(d) states:

> **When Facts are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order.

Plaintiffs seeking additional discovery have a "burden to state with sufficient particularity to the district court . . . why discovery [is] necessary." *Iksossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (internal quotation marks omitted). Ortiz-Diaz satisfies this burden with a declaration from his attorney explaining that further investigation is needed to determine whether similarly situated employees outside Ortiz-Diaz's protected class were treated more favorably, what role McCarty played in making transfer decisions, and other questions necessary to justify Ortiz-Diaz's claims. Pl.'s Opposition, Ex. I. Thus, consistent with its obligation to review Title VII cases de novo and to not entirely rely on the administrative record, the court will deny summary judgment with respect to the remaining discrimination claims without prejudice to renew after the parties have engaged in discovery.

## IV. CONCLUSION

Based on the foregoing, the court will GRANT defendant HUD-OIG's motion in part and DISMISS the retaliation claim. However, it will DENY the motion with respect to the discrimination claims without prejudice to a new motion after discovery has been conducted. Pursuant to Fed.R.Civ.P. 12(b)(4)(A), the defendant has 14 days from this date to serve an

answer to the plaintiff's complaint. The court also ORDERS discovery pursuant to Fed.R.Civ.P. 56(d) to help resolve Ortiz-Diaz's surviving claims of racial and national origin discrimination. Within 21 days of the defendant's answer, the parties are to confer and develop a proposed scheduling order in accordance with Fed.R.Civ.P. 16(b) and 26(f) and LCvR 16.3. In its scheduling order, the court will order a date for a renewed summary judgment motion to be filed.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on August 16, 2013.