UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC 1 8 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |
|---|---|
| SAMUEL ORTIZ-DIAZ, ) ) ) Plaintiff, ) ) v. ) ) UNITED STATES DEPARTMENT OF ) HOUSING AND URBAN DEVELOPMENT, ) OFFICE OF THE INSPECTOR GENERAL ) ) Defendant. ) ) | Civil Action No. 12-726 (RCL) |

## MEMORANDUM OPINION

This case arises from plaintiff Samuel Ortiz-Diaz's allegations of discrimination against the U.S. Department of Housing and Urban Development's Office of Inspector General ("Agency"). Ortiz-Diaz alleges that Assistant Inspector General, Investigations, John McCarty, denied Ortiz-Diaz's requests to transfer to Albany, New York and Hartford, Connecticut because of his race and national origin. Ortiz-Diaz, who is Hispanic and Puerto Rican, contends that McCarty routinely approved transfers for similarly-situated white, non-Puerto Rican investigators to their desired locales. Pl.'s Opp'n 2.

Before the Court is Mr. Ortiz-Diaz's Motion to Compel, ECF No. 20, the Agency's response, ECF No. 21, and Mr. Ortiz-Diaz's reply, ECF No. 22. Also before the Court is the Agency's Motion for Summary Judgment, ECF No. 23, Mr. Ortiz-Diaz's opposition, ECF No. 25, and defendant's reply, ECF. No. 26. Based on these submissions, applicable law, and the record in this case, the Court will GRANT defendant's Motion [23] for Summary Judgment, DENY plaintiff's Motion [20] to Compel, and DISMISS plaintiff's claim.

I.  BACKGROUND

Mr. Ortiz-Diaz began his employment with the Agency in April 1998 as a Criminal Investigator in San Juan, Puerto Rico. Am. Compl. ¶ 6; Def.'s Mot. Summ. J. 4. In December of 2000, Ortiz-Diaz requested a reassignment to Hartford, Connecticut, after his wife received a job offer in Albany, New York. ECF No. 5-4 at 12 (Ramos Decl.); *id.* at 22 (Notification of Personnel Action). The reassignment request was granted and Mr. Ortiz-Diaz and his wife moved to Albany. *Id*; ECF 25-3 (Ortiz-Diaz Decl.) ¶ 1.

Mr. Ortiz-Diaz subsequently applied for and received a position with the Criminal Investigation Division in Washington, D.C., where he could earn a higher salary. Ortiz-Diaz Decl. ¶¶ 1–5. He agreed to remain with HUD OIG in Washington from December 15, 2009 to December 15, 2010 or repay relocation expenses. ECF 5-3 (Ortiz-Diaz Rebuttal Aff.) at 37. Mr. McCarty approved Ortiz-Diaz's promotion. ECF 23-3 (McCarty Dep.) at 79:1–5.

In July 2010, Mr. Ortiz-Diaz applied for an Assistant Special Agent in Charge position in New York City and was not selected. ECF 5-4 at 64; Ortiz-Diaz Decl. ¶ 11. Although he believed that he was denied the position because of his race, he did not pursue an EEO claim. Ortiz-Diaz Decl. ¶ 11. The individual selected for the position was also Hispanic, and Mr. McCarty approved his selection. McCarty Dep. 83:6–84:3.

The Agency maintains a no cost, voluntary transfer program that allows investigators to request voluntary transfers to duty stations of their choice for reasons other than the specific staffing needs of the Agency. ECF 25-20 (Dep. of Lester A. Davis, Deputy Assistant Inspector General for Investigations) at 14. In October 2014, Mr. Ortiz-Diaz requested that he be considered for such a transfer to Albany, New York or Hartford, Connecticut. Although there were no Special Agent positions in Albany, Special Agent in Charge Rene Febles felt it would be

helpful to have an agent stationed there. ECF 25-15 at 26–29 (Febles Dep.). Additionally, Mr. Ortiz-Diaz believes that it is unnecessary to be stationed at an office housing other investigators and it was common for people to work from home. Ortiz-Diaz Decl. ¶ 19.

The Agency also asserts that there was no position available in Hartford. Previously, on July 19, 2010, Mr. McCarty had sent OIG employees an email announcing a possible no-cost reassignment to Hartford and requesting applications. ECF 5-3, 41 (Email); Ortiz-Diaz Decl. ¶¶ 15-18. Mr. McCarty testified that the email was mistakenly sent due to poor communications: It should never have been issued because there was no position available there and the region was overstaffed. McCarty Dep. 21:3–22:12. Mr. Lester Davis, Deputy Assistant Inspector General for Investigations, stated that if a position was cancelled it was the practice of OIG not to send a recall email. ECF 23-4 (Davis Dep.) at 57:5–17. As Mr. Ortiz-Diaz points out, a white employee was subsequently relocated to the Hartford office some time in 2011—but that was *after* a Special Agent announced (in January 2011) that she would be leaving the Agency. ECF 25-11.

It is undisputed that Mr. Ortiz-Diaz's requests for transfers were denied, although the reasons for the denials are hotly contested. Mr. Ortiz-Diaz alleges that the denials were motivated by racial discrimination because voluntary transfers were "routinely" approved for white investigators, even when it required creating positions or permitting working remotely. Pl.'s Opp'n 9–10.

## II. SUMMARY JUDGMENT MOTION

### A. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

3

R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant may successfully support its motion by "informing the district court of the basis for its motion, and identifying the portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

A fact is material if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," on a motion for summary judgment. *Id.* However, if the non-movant's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50. The non-movant must present more than a "mere . . . scintilla of evidence" to avoid summary judgment. *Id.* at 252. Indeed, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact." *Pub. Health Research Grp. v. FDA*, 185 F.3d 898, 908 (D.C. Cir. 1999).

Where a party fails to sufficiently prove "an element essential" to that party's case, there is "no genuine issue as to any material fact." *Celotex*, 477 U.S. at 322–23. Then, "[t]he moving party is entitled to a judgment as a matter of law." *Id.* (internal quotations omitted).

**B. Analysis**

Title VII requires that a plaintiff has suffered an adverse employment action. *Ginger v. District of Columbia*, 527 F.3d 1340, 1343 (D.C. Cir. 2008). Here, the alleged adverse

employment action was the denial of Mr. Ortiz-Diaz's requests for lateral transfers. Mr. Ortiz-Diaz must establish that the denial of his request for a transfer created a materially significant disadvantage in his working conditions. He has failed to meet this burden. In the D.C. Circuit,

> [a] plaintiff who is . . . denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003) (quoting *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). Absent extraordinary circumstances not present here, a purely lateral transfer does not amount to an adverse employment action. *Medina v. Henderson*, No. 98-5471, 1999 WL 325497, at *1 (D.C. Cir. Apr. 30, 1999).

Mr. Ortiz-Diaz mischaracterizes the Agency's no-cost transfer program when he refers to it as a privilege of employment. He insists that a privilege of employment as an investigator is the ability to move around the country as desired for personal reasons. But the privilege accorded investigators was the ability to "request to be considered" for a position in a different location *if* a vacancy is available. ECF 5-3 at 193–95 (Program Guidelines). Indeed, the program guidelines state that "[i]t is important to emphasize that there are no guarantees that the employee's request will or should be approved." *Id.* at 193. Mr. Ortiz-Diaz was permitted to make a request to be considered, thus exercising the only privilege provided.

In fact, the record suggests that, if anything, Mr. Ortiz-Diaz would have suffered an adverse employment action if he *had* been transferred. He has not alleged—not to mention presented any evidence—that he lost pay, supervisory responsibilities, or job opportunities as a result of the denials. *See* Am. Compl. The Agency avers that a position in Hartford or Albany would have actually paid less than the position in Washington. ECF 5-4 (Decl. of Lester Davis)

at 62 (noting that ". . . Senior Special Agents (GS-14) stationed with the Criminal Investigations Division who have request reassignment to the field as a Special Agent have been required to accept a downgrade to Special Agent (GS-13)"). Mr. Ortiz-Diaz alleges that it was common to maintain pay grades when transferred to the field, but he provides no evidence in support of this allegation. Indeed, a new position in Hartford or Albany arguably would have been organizationally a demotion from Ortiz-Diaz's position in Washington, D.C., the headquarters where the Inspector General and other senior staff are stationed. An employer's denial of a transfer request that would have resulted in a reduction in pay and the employee's demotion within the organization, without more, cannot constitute an adverse employment action.

Mr. Ortiz-Diaz's contention that the denial of his transfer request constituted an adverse employment action arises in part from the fact that he wished to live closer to his family. Such subjective, personal disappointments do not meet the objective indicia of an adverse employment action. Mr. Ortiz-Diaz does not cite—and the Court cannot locate—any case law suggesting that "materially adverse consequences" include an employee's personal preferences. Indeed, in the cases cited by Mr. Ortiz-Diaz, the plaintiffs alleged something more than a personal preference for a lateral position. Such allegations included "significantly different—and diminished—supervisory and programmatic responsibilities," *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007), or the denial of "a position with substantially greater supervisory authority," *Stewart*, 352 F.3d at 427. "The [D.C.] Court of Appeals has consistently reaffirmed that . . . purely subjective injuries ... are not adverse actions." *Alexander v. Tomlinson*, 507 F. Supp. 2d 2, 14 (D.D.C. 2007).

It follows that an employee's subjective desire to relocate is "not the sort of job-related attribute" that serves converts a lateral transfer into an adverse employment action. *Id.* at 14. In

*Medina v. Henderson*, the D.C. Circuit held that an employee had not demonstrated that her employer's decision to relocate her from Denver to Washington, D.C. was an adverse employment decision because it would not "require a material change in appellant's title, duties, salary, benefits, or working hours, or otherwise amount to a constructive demotion." No. 98-5471, 1999 WL 325497, at *1 (D.C. Cir. Apr. 30, 1999). If an employer's decision to force an employee to move across the country is not, without more, an adverse employment decision, it is unlikely that the reverse—denying an employee's request to transfer across the country—would be. Other Circuits to have directly considered this issue agree that an employee's desire to live in a certain city is a not a job-related attribute to be considered. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (denial of plaintiff's request to transfer from New York to Las Vegas, where plaintiff maintained a home, did not create a materially significant disadvantage in her working conditions as "[s]uch subjective, personal disappointments do not meet the objective indicia of an adverse employment action"); *Dilenno v. Goodwill Indus. Of Mid-E. Pa.*, 162 F.3d 235, 236 (3d Cir. 1998) (suggesting that the "desire to live in a certain city" is not a job-related attribute that should be taken into account when determining whether a lateral transfer was an adverse employment action).

Mr. Ortiz-Diaz argues that his "undisputed evidence further illustrates that a transfer . . . [and] working specifically under Hispanic SAC Rene Febles, would have increased his opportunities for promotion. It would certainly decrease the likelihood that he would fall victim to McCarty's discriminatory whims and as a result have his career curtailed or negatively impacted." Pl.'s Opp'n 14. However, the "materially adverse consequences" that he alleges are purely speculative. His statement is not supported by any citation to the record, and it is far from clear that Mr. Ortiz-Diaz *has* provided such evidence. Because Mr. Ortiz-Diaz's argument that

his career would advance under the direction of Mr. Febles is highly speculative, it is insufficient to survive summary judgment. *See Casey v. Mabus*, 878 F. Supp. 2d 175, 186 (D.D.C. 2012) ("The plaintiff's claims that her reassignment had 'fewer opportunities for job growth and promotion,' unsupported by any factual allegations, are speculative and likewise unavailing); *Edwards v. EPA*, 456 F. Supp. 2d 72, 86 (D.D.C. 2006) (holding that the denial of an opportunity "must have a discernible, as opposed to a speculative, effect on the terms, conditions, or privileges of one's employment"); *Forkkio v. Tanoue*, 131 F. Supp. 2d 36, 40 (D.D.C. 2001) *aff'd sub nom. Forkkio v. Powell*, 306 F.3d 1127 (D.C. Cir. 2002) ("Plaintiff's own belief" that a reassignment was accompanied by a loss in stature or prestige is insufficient to demonstrate an adverse employment action).

Finally, Mr. Ortiz-Diaz argues that the Court already rejected the Agency's claim that denial of reassignment requests does not constitute adverse actions in its Memorandum Opinion of August 16, 2013. Pl.'s Opp'n 14–15. The Court previously held that Mr. Ortiz-Diaz had met his burden under Rule 12(b)(6) when he alleged that he was "denied transfer requests adversely affecting his career opportunities." ECF 11 at 6. The Court thus determined that Mr. Ortiz-Diaz had alleged sufficient facts to state a claim, because, as discussed above, the denial of a lateral transfer *does* constitute an adverse employment action where career opportunities are affected. Indeed, Mr. Ortiz-Diaz had alleged that returning to the field "would have improved [his] opportunity for promotion to Assistant or Special Agent in Charge position in a well-regarded region." Pl.'s Opp'n to Mot. Dismiss 13. However, Mr. Ortiz-Diaz faces a higher burden now, and the Court has not previously considered whether he has presented evidence sufficient for the summary judgment phase. Mere allegations and speculative beliefs that a different supervisor would treat him better and offer him more job opportunities is not sufficient to survive at the

summary judgment phase. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (finding non-movant must present more than a "mere . . . scintilla of evidence" to avoid summary judgment); *Pub. Health Research Grp. v. FDA*, 185 F.3d 898, 908 (D.C. Cir. 1999) ("Conclusory allegations unsupported by factual data will not create a triable issue of fact."). Because Mr. Ortiz-Diaz points to no evidence beyond his own speculation that he would have had better career opportunities in a different city, he has failed to meet this higher burden.

### III. MOTION TO COMPEL

The Court grants the Agency's Motion for Summary Judgment notwithstanding Mr. Ortiz-Diaz's pending Motion to Compel. It has long been recognized that trial courts are vested with broad discretion to manage the conduct of discovery. *See, e.g., Brennan v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 494 F.2d 1092, 1100 (D.C. Cir. 1974); Fed. R. Civ. P. 26. It is within the sound discretion of the Court to postpone discovery of issues relating to the merits of a case pending resolution of potentially dispositive motions. *Westminster Investing Corp. v. G. C. Murphy Co.*, 434 F.2d 521, 526 (D.C. Cir. 1970). The Court therefore withheld consideration of Ortiz-Diaz's Motion to Compel until this point. In light of the Motion for Summary Judgment, the Court sees no need for further discovery. In his Motion to Compel, Mr. Ortiz-Diaz does not request any information that would defeat summary judgment. As such, "[p]rolongation of the controversy would be wasteful and useless." *Id.*

As explained above, the Court grants Summary Judgment because Mr. Ortiz-Diaz has failed to demonstrate that he has experienced an adverse employment action. None of the information he seeks could possibly alter our conclusion. Instead, Mr. Ortiz-Diaz seeks information related to comparators; for example, he seeks the identification of all employees who requested transfers and whether or not they were granted, all vacancy announcements, and all

communications "requesting and addressing the need of personnel." Mot. Compel at 2-3. He asks the Agency to "describe any facts in support of any defense asserted or to be asserted." *Id.* at 4. He seeks information regarding prior complaints of discrimination against supervisors within the agency and the also documents relating to seasonal peer reviews of the Agency's investigations. *Id.* at 5–6. Finally, he seeks information relating to discriminatory statements allegedly made in the workplace. *Id.* at 7-8.

But even if Mr. Ortiz-Diaz uncovered all that he hopes for in the above inquiries—that is, evidence that all white employees were granted voluntary transfers while all non-white employees were refused them, that discriminatory statements were rampant, that dozens of complaints have been lodged—it would not alter the conclusion that his denial of a lateral transfer was not an adverse employment decision. The Court therefore denies Mr. Ortiz-Diaz's Motion to Compel.

### IV. CONCLUSION

Mr. Ortiz-Diaz has failed to offer any evidence beyond his own speculation that he suffered an adverse employment action, so he has failed to show an essential element of his case. As such, the defendant's Motion for Summary Judgment is GRANTED. Because Mr. Ortiz-Diaz does not seek any information in his Motion to Compel that would alter this conclusion, his Motion to Compel is DENIED. Plaintiff's claims are DISMISSED. A separate order consistent with this Opinion shall issue on this 18th day of December, 2014.

Signed December 18, 2014 by Royce C. Lamberth, United States District Judge.